UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES C. MCCURDY, | No. 1:21-cv-01699 KES GSA (PC) |
| Plaintiff, | SCREENING ORDER |
| v. | (ECF No. 1) |
| PRICE, et al., | ORDER FINDING SERVICE OF COMPLAINT APPROPRIATE |
| Defendants. | |

Plaintiff, a state prisoner proceeding pro se and in forma pauperis, has filed this civil rights action seeking relief under 42 U.S.C. § 1983. The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

Before this Court is Plaintiff's complaint. ECF No. 1. For the reasons stated below, the Court finds that it states cognizable claims against Defendants J. Price; Sergeant Martinez; D. White; G. Rodriguez; E. Limon; E. Puga, and Sergeant Beer. Therefore, the Court will order that it be served on them.

I.   SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek

1

monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)-(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)); see Whitaker v. Tesla Motors, Inc., 985 F.3d 1173, 1176 (9th Cir. 2021) (citing Iqbal). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). To state a viable claim, Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678-79; Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). While factual allegations are accepted as true, legal conclusions are not. Id. The mere possibility of misconduct falls short of meeting this plausibility standard. Id.

Finally, under Federal Rules of Civil Procedure 18 and 20, the claims raised against a party in a complaint should be related. In addition, defendants should only be joined in an action if it can be alleged that they are liable for the "same transaction, occurrence, or series of transactions or occurrences" where "any question of law or fact common to all defendants will arise in the action." See Fed. R. Civ. P. 18(a) and 20(a)(2).

II. STANDARD OF REVIEW

A. Generally

Section 1983 "provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source

1  of substantive rights, but merely provides a method for vindicating federal rights conferred
2  elsewhere.  Graham v. Connor, 490 U.S. 386, 393-94 (1989).
3        To state a claim under Section 1983, a plaintiff must allege two essential elements:  (1)
4  that a right secured by the Constitution or laws of the United States was violated and (2) that the
5  alleged violation was committed by a person acting under the color of state law.  See West v.
6  Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cty., 811 F.2d 1243, 1245 (9th Cir. 1987).

      B.   Linkage Requirement

In addition, under Section 1983, a plaintiff bringing an individual capacity claim must demonstrate that each defendant personally participated in the deprivation of his rights.  See Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  There must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See Ortez v. Washington County, State of Oregon, 88 F.3d 804, 809 (9th Cir. 1996); see also Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

Government officials may not be held liable for the actions of their subordinates under a theory of respondeat superior.  Iqbal, 556 U.S. at 676 (stating vicarious liability is inapplicable in Section 1983 suits).  Since a government official cannot be held liable under a theory of vicarious liability in Section 1983 actions, a plaintiff must plead sufficient facts showing that the official has violated the Constitution through his own individual actions by linking each named defendant with some affirmative act or omission that demonstrates a violation of plaintiff's federal rights.  Iqbal, 556 U.S. at 676.

    III.   PLAINTIFF'S COMPLAINT

    A.   Facts Alleged

Plaintiff, an inmate currently incarcerated at California Health Care Facility, names seven (7) individuals as defendants in this action.  All of them were employed at California State Prison – Corcoran ("CSP-Corcoran") at the time of the events in question:  Sergeants Martinez and Beer, and Custody Officials J. Price, D. White, G. Rodriguez, E. Limon, and E. Puga.  ECF No. 1 at 3.

At the outset it should be noted that Plaintiff's complaint is extremely difficult to read due

its small print and somewhat confusing narration. The Court nevertheless has gone to some length attempting to accurately recite the facts set forth in it when applicable to this order.

1.  Claim One:  Eighth Amendment Excessive Force

Plaintiff contends that his Eighth Amendment right to be free from excessive force was violated when, on October 2, 2018, after being treated at "Emergency TTA" for severe pain in his abdomen, chest and a migraine headache, Defendants refused to allow him to remain there until the pain medication that he had been given could take effect. ECF No. 1 at 4, 6. Because Plaintiff's escort was past the end of his shift time, Defendant Price told the escort that he could go. Id. at 5.

Plaintiff states that when it was time for him to leave TTA he refused to go. Defendant Price made certain that Plaintiff was secured in his bed [gurney]. ECF No. 1 at 5. Plaintiff then states that Defendants Price, White, Martinez, Rodriguez, Limon, and Puga took him to a holding cell that was away from medical staff at which point Defendants Price and White grabbed him and Defendant White hit him in the ear and on the side of his face telling him to shut his mouth. Id. Then he said that the two of them, along with the other Defendants (not Beer), uncuffed him from the gurney, wrestled him to the ground and began beating him, banging his head into the wheelchair. Id. Eventually Plaintiff states he was secured into the wheelchair, and when he tried to drag his feet, Defendants kicked his legs until they were able to wheel him out of the facility. Id.

Plaintiff states that when he complained and asked for Defendants' names so that he could report them and file a 602 and 7219 report, Defendant White told him that he did not have the b***s to appeal because correctional officer Bautista and others could pull Plaintiff aside and break his jaw like in a previous instance to apparently another inmate. ECF No. 1 at 5. This, Plaintiff, asserts, led him to believe that Defendants were retaliating against him because he was litigating and filing 602s.[1] Id.

Plaintiff further alleges that once on the [cell] block, Defendants carried him up the stairs

---

[1] Plaintiff contends that two years earlier after a cell extraction, Bautista sexually assaulted him, and that at that time, he had an upcoming trial date against him. ECF No. 1 at 5.

4

by his arms and legs and threw him into a cement bunk. ECF No. 1 at 5. He states that when he then asked for his eyeglasses, they refused to give them to him telling him that they were taking them in order to teach him a lesson. Id. As a result, Plaintiff says that he went weeks without them. Id. Plaintiff also alleges that after the incident he went "man down" so that he could be seen by a higher official so that his injuries could be documented, but he was ignored. He alleges his injuries included a black eye, bruised ear, chest, arms and legs, multiple scratches, couldn't see and suffered emotional distress. Id.

Finally, Plaintiff states that Defendant Beer refused to document his injuries or find his glasses so he couldn't pursue his complaint. ECF No. 1 at 5. Id. Lastly, Plaintiff contends this prevented him from receiving proper care for his injuries and ongoing sufferings. ECF No. 1 at 6.

### 2. Claim Two: First Amendment Retaliation

In Claim Two, Plaintiff alleges that the above-referenced incident establishes that Defendants violated his First Amendment right to be free from retaliation. ECF No. 1 at 6. He states that they took the opportunity to use excessive force on him because they had ulterior motives, that he realized this as soon as Defendant White mentioned correctional officer Bautista. Id. He argues that Defendants used his medical issues as a perfect opportunity to use force to assault him, cause him harm in order to intimidate him so that he would stop his litigating. He further states Defendant Beer refused to document his injuries and ongoing sufferings so he couldn't document them for his complaint and took his glasses so he couldn't pursue his complaint. Id.

### 3. Claim Three: Deliberate Indifference to Serious Medical Need

In Claim Three, Plaintiff alleges that Defendants violated his Eighth Amendment right to be deliberately indifferent to his serious medical needs when, after he went man down and taken to TTA, they refused to let him stay there until the medication that had been given to him for his pain kicked in, and they attacked him there and after they had wheeled him back to the block, they carried him upstairs and threw him into the cement bunk and refused to return his glasses in order to teach him a lesson. ECF No. 1 at 6. He further claims that Defendant Beer's failure to document his injuries on a medical complaint card and make certain that his eyeglasses were

returned to him also constituted deliberate indifference to his serious medical needs. Id.

### 4. Claim Four: Eighth Amendment Cruel and Unusual Punishment

In Claim Four, Plaintiff asserts that Defendants violated his Eighth Amendment rights to be free from cruel and unusual punishment when they deprived him of the "minimal civilized measure of life's necessities as they deprived him of his basic human needs of medical care and personal safety. ECF No. 1 at 7. Examples he provides are: (1) Defendant Price letting his escort go before he transported Plaintiff back to his block, and then using physical force to remove him from the hospital bed [gurney] before his medications took effect; (2) Defendants Price, White, and 4 others beating him by punching in the ear and back of his head after they were aware that he was suffering from a migraine headache; (3) officials forcing him into a wheelchair and threatening to break his jaw; (4) Defendants refusing to provide him information so that he could file a 602 grievance; (5) Defendants tossed him into his cement bunk and taking his glasses, which he was unable to replace for several weeks, and (6) Defendant Beer refusing to document his injury and collect his glasses for him. Plaintiff also claims that Defendants "interfered, intimidated and then retaliated against [him] for [filing] 602[s][,] which rendered [his] administrative remedies unavailable." Id. (brackets added).

## B. Harm Caused and Remedy Sought

Plaintiff says that after the incident, he was left with a black eye as well as a bruises to his ear, arms and chest, as well as multiple scratches.   ECF No. 1 at 5. He also says that after the incident he was unable to see, suffered emotional distress, had ongoing MH [mental health] issues that got worse and felt suicidal. Id.

Plaintiff seeks declaratory relief stating that Defendants violated his rights. ECF No. 1 at 4. He also seeks injunctive relief which orders Defendants to stop harassing him and stop their pattern of guard brutality and retaliation against him. Id.. Id. In addition, Plaintiff seeks compensatory damages in the amount of $2,500.00 from each Defendant jointly and severally, as well as $5,000.00 in punitive damages from each Defendant. Id. at 8. Finally, Plaintiff seeks his costs as well as any additional relief that the Court deems just, proper, and equitable. Id.

## IV. DISCUSSION

6

### A. Claim One: Eighth Amendment Excessive Force

#### 1. Applicable Law

"In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places restraints on prison officials, who may not . . . use excessive physical force against prisoners." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (citing Hudson v. McMillian, 503 U.S. 1 (1992)). "[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 6-7 (brackets added) (referencing Whitley v. Albers, 475 U.S. 312 (1986)). Under the Eighth Amendment, a court looks for malicious and sadistic force, not merely objectively unreasonable force. Clement v. Gomez, 298 F.3d 898, 903 (9th Cir. 2002).

"[T]he extent of injury suffered by an inmate is one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation." Hudson, 503 U.S. at 7 (internal quotation marks omitted) (citing Whitley 475 U.S. at 321). When determining whether the use of force was wanton and unnecessary, evaluating the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response may also be proper to evaluate. See Hudson, 503 U.S. at 7 (citation omitted). The absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it. Id.

"[N]ot every malevolent touch by a prison guard gives rise to a federal action." Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (brackets added) (internal quotation marks omitted) (citing Hudson, 503 U.S. at 9). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Wilkins, 559 U.S. at 37-38 (citation omitted). "An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." Id. at 38 (citations omitted) (internal quotation marks omitted).

7

While de minimis uses of physical force generally do not implicate the Eighth Amendment, significant injury need not be evident in the context of an excessive force claim, because "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." Hudson, 503 U.S. at 9 (citing Whitley, 475 U.S. at 327). "Injury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts." Wilkins, 559 U.S. at 38.

### 2. Analysis

Plaintiff has raised viable Eighth Amendment excessive force claims against Defendants Price, White, Martinez, Rodriguez, Limon, and Puga. When Defendants Price and White grabbed Plaintiff and Defendant White hit him in the ear and on the side of his face, this constituted excessive force. Thereafter, when the two of them along with the other Defendants Martinez, Rodriguez, Limon, and Puga, took Plaintiff to a cell that was away from medical staff where they uncuffed him from the gurney he was on, wrestled him to the ground and began beating him and then kicked his feet when Plaintiff began dragging them while in his wheelchair (see ECF No. 1 at 5). These acts of Defendants do not appear to have been done in good faith in order to maintain or restore discipline. See Hudson, 503 U.S. at 6-7 (brackets added) (reference omitted). On the contrary, the force that Defendants allegedly used against Plaintiff appear to have been employed maliciously and sadistically in order to cause Plaintiff harm, especially given the fact that the event occurred while Plaintiff was out to medical because he was experiencing severe pain in his abdomen and chest and was suffering from a migraine. See ECF No. 1 at 4, 6.

Plaintiff's allegation that once he was returned to the block, Defendants Price, White, Martinez, Rodriguez, Limon, and Puga carried him up the stairs by his arms and legs, then threw him onto his cement bunk (see ECF No. 1 at 5, 7) also supports the Court's finding that Plaintiff has raised viable Eighth Amendment excessive force claims against Defendants for this act, as well. Plaintiff's allegation that because of Defendants' treatment of him, he was left with a black

eye, bruises to his ear, arms, legs and chest, multiple scratches and was unable to see (see id. at 5) all after Plaintiff's visit to medical in an attempt to have his abdominal pain and migraine headache relieved, also supports a threshold finding that Defendants' use of force on Plaintiff was wanton and unnecessary given the situation. See generally Hudson, 503 U.S. at 7. For these reasons, Defendants will be required to file a response to this claim.

### B. Claim Two:  First Amendment Retaliation

#### 1. Applicable Law

In order to state a claim under Section 1983 for First Amendment retaliation, a prisoner must establish that he was retaliated against for exercising a constitutional right, and that the retaliatory action was not related to a legitimate penological purpose, such as preserving institutional security. See Barnett v Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994). Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a Section 1983 claim. See generally Rizzo v. Dawson, 778 F.2d 527, 531-32 (9th Cir. 1985).

In Rhodes v. Robinson, 408 F.3d 559 (9th Cir. 2005), the Ninth Circuit noted that of "fundamental import" to prisoners was their First Amendment right to file grievances and to pursue civil rights litigation in the courts. Id. at 567. Then, it identified the elements needed to establish a cognizable First Amendment retaliation claim when it wrote:

> Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.

Rhodes, 408 F.3d at 567-68 (footnote and citations omitted).

The alleged adverse action need not itself be an independent constitutional violation. Pratt v. Rowland, 65 F.3d 802, 806 (1995) (to prevail on a retaliation claim, plaintiff need not "establish an independent constitutional interest" was violated); see also Hines v. Gomez, 108 F.3d 265, 268 (9th Cir. 1997) (upholding jury determination of retaliation based on filing of a false rules violation report); Rizzo, 778 F.2d at 531 (transfer of prisoner to a different prison

9

constituted adverse action for purposes of retaliation claim). "[T]he mere threat of harm can be an adverse action." Brodheim v. Cry, 584 F.3d 1262, 1270 (9th Cir. 2009) (emphasis in original); Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012).

    2. Analysis

  Plaintiff has also stated a cognizable First Amendment retaliation claim against Defendant White. The fact that after he complained about their beating, Plaintiff asked for Defendants' names so that he could follow up with a 602 and 7219 injury report and Defendant White told Plaintiff that he did not have the b***s to file a grievance like the instance with Correctional Officer Bautista because him and the other 4 could pull Plaintiff over behind the gate and break his jaw (see ECF No. 1 at 5), supports the Court's finding that Plaintiff has raised a viable First Amendment retaliation claim against Defendant White. Prisoners have a First Amendment right to file grievances and to be free from retaliation for doing so. Pratt, 65 F.3d at 806 & n.4.

  In addition, mere threats of future harm tied to an inmate's filing of grievances also violates that inmate's First Amendment rights. See Brodheim, 584 F.3d at 1270; Watison, 668 F.3d at 1114. Finally, Defendant White's threat that if he did file grievances against Defendants he could get his jaw broken could have reasonably chilled Plaintiff's exercise of his right to file them, and Defendant White's threat did not reasonably advance any legitimate correctional interest. See Rhodes, 408 F.3d at 567-68. Therefore, Defendant White will be ordered to file a response to this claim.

   C. Claim Three: Deliberate Indifference to Serious Medical Need

    1. Applicable Law

  "The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones." Farmer, 511 U.S. at 832 (internal quotation marks and citations omitted). "[A] prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." Id. at 834 (internal quotation marks and citations omitted). Second, the prison official must subjectively have a sufficiently culpable state of mind, "one of deliberate indifference to inmate health or

safety." Id. (internal quotation marks and citations omitted).  This second prong "is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal citations, punctuation and quotation marks omitted); accord, Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Lemire v. CDCR, 726 F.3d 1062, 1081 (9th Cir. 2013).

Serious medical need can be shown by demonstrating that a failure to treat a prisoner could result in significant injury or worsening pain. Jett, 439 F.3d at 1096.  A deliberately indifferent response can be shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need coupled with harm caused by that indifference. Id.

Whether a defendant had requisite knowledge of a substantial risk of harm is a question of fact. Farmer, 511 U.S. at 842.  Thus, liability may be avoided by presenting evidence that the defendant lacked knowledge of the risk and/or that his response was reasonable in light of all the circumstances. See Farmer, 511 U.S. at 844–45; see also Simmons v. Navajo County Ariz. 609 F.3d 1011, 1017-18 (9th Cir. 2010) (requiring official be subjectively aware of serious medical need and fail to adequately respond to need to establish deliberate indifference).

The official is not liable under the Eighth Amendment unless he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.  Then, he must fail to take reasonable measures to abate the substantial risk of serious harm. Id. at 847.  "Mere negligent failure to protect an inmate from harm does not violate the Cruel and Unusual Punishments Clause." Farmer, 511 U.S. at 835.

2.  Analysis

Plaintiff has stated viable Eighth Amendment deliberate indifference to serious medical needs claims against Defendants Price, White, Martinez, Rodriguez, Limon, Puga and Beer. Assuming that Plaintiff's allegations are true that after he had been taken to emergency Defendants beat him up then, upon his return to the block, threw him into his cement bunk and refused to return his glasses (see ECF No. 1 at 5-6), all while Plaintiff was in pain waiting for his

11

medication to kick in, Defendants' actions constituted "the denial of the minimal civilized measure of life's necessities" (Farmer, 511 U.S. at 834) – i.e., the necessity not to be further traumatized and injured by being beaten while already in physical pain. These actions that Defendants are alleged to have taken against Plaintiff show that Defendants subjectively had sufficiently culpable states of mind that were deliberately indifferent to Plaintiff's health and safety. See id. Plaintiff's assertion that because of Defendants' actions he ended up bruised and felt emotional distress and suicidal (see ECF No. 1 at 5, 7) further establishes that they purposely failed to respond to Plaintiff's medical need – and even actively contributed to and exacerbated it – and that Plaintiff was harmed due to their indifference. See Jett, 439 F.3d at 1096. Therefore, these Defendants will be ordered to file a response to this claim.

Furthermore, Defendant Beer's failure to document Plaintiff's injuries on a medical complaint card and make certain that Plaintiff's eyeglasses were returned to him (see ECF No. 1 at 6) also constitutes deliberate indifference to Plaintiff's serious medical needs. Without documentation of Plaintiff's injuries at the hands of the Defendants presumably would delay or deny Plaintiff's treatment for those injuries. The intentional failure to timely address and/or treat a prisoner's injury constitutes deliberate indifference to serious medical need. See Estelle v. Gamble, 429 U.S. 97, 104-105 (1976) (stating deliberate indifference manifested by prison guards intentionally denying or delaying access to medical care); see generally Farmer, 511 U.S. at 842 (stating prison official acting or failing to act despite knowledge of substantial risk of harm constitutes Eighth Amendment violation). For this reason, Plaintiff has also stated a viable Eighth Amendment deliberate indifference claim against Defendant Beer, and thus he along with Defendants Price, White, Martinez, Rodriguez, Limon, and Puga will be ordered to file an answer to this claim.

### D. Claim Four: Eighth Amendment Cruel and Unusual Punishment

In Claim Four, Plaintiff effectively alleges that all the incidents that occurred with Defendants on or around October 2, 2018, constituted cruel and unusual punishment in violation of his Eighth Amendment rights. See ECF No. 1 at 7 (Claim Four). The Court will disregard this

claim as duplicative.

The Cruel and Unusual Punishment Clause of the Eighth Amendment includes protection against excessive force. See Hudson, 503 U.S. at 4 (1992) (stating use of excessive physical force against a prisoner is apt to constitute cruel and unusual punishment); Wilkins, 559 U.S. at 34 (citing Hudson). The Clause also includes protections against deliberate indifference to the serious medical needs of prisoners. See, e.g., Johnson v. Prentice, 144 S. Ct. 11, 14 (2023 (citation omitted)) (stating official's deliberate indifference to inmate's health or safety can be said to have inflicted cruel and unusual punishment); City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 243–44 (1983) (citing Estelle, 429 U.S. at 104). Thus, Plaintiff's allegations in Claim Four that the acts of each Defendant on October 2, 2018, constituted cruel and unusual punishment while arguably correct, is redundant. Therefore, the Court does not address it.

## V. CONCLUSION

Plaintiff has stated a viable First Amendment retaliation claim against Defendant White for allegedly implying that he could have Plaintiff's jaw broken if he filed grievances about the October 2, 2018, incident. Plaintiff has also stated viable Eighth Amendment excessive force claims against Defendants Price, White, Martinez, Rodriguez, Limon, and Puga for allegedly beating him after he received treatment at medical.

In addition, Plaintiff has stated cognizable Eighth Amendment deliberate indifference to serious medical need claims against Price, White, Martinez, Rodriguez, Limon and Puga given that they allegedly beat him while he was already in pain and had just been given medical treatment. Lastly, Plaintiff has raised a viable Eighth Amendment deliberate indifference to serious medical need claim against Defendant Beer, who despite Plaintiff's requests, is alleged to have failed to document Plaintiff's injuries after the attack and failed to ensure that Plaintiff's eyeglasses were returned to him. Therefore, the Court will order that Plaintiff's complaint be served and that Defendants file an answer to it.

Accordingly, IT IS HEREBY ORDERED that:

1. In accordance with 28 U.S.C. § 1915A and 42 U.S.C. § 1997e(c), the Court has

screened and found service of the complaint (ECF No. 1) appropriate;

2. Plaintiff has stated cognizable claims against the following Defendants, all of whom were employed at California State Prison – Corcoran at the time of the incidents in question:

- First Amendment retaliation claim against Defendant D. White;
- Eighth Amendment excessive force claims against Defendants J. Price; D. White; Sergeant Martinez; G. Rodriguez; E. Limon, and E. Puga, and
- Eighth Amendment deliberate indifference to serious medical need claims against Defendants J. Price; D. White; Sergeant Martinez; G. Rodriguez; E. Limon; E. Puga, and Sergeant Beer.

3. If Defendants either waive service or are personally served, they are required to reply to the complaint. 42 U.S.C. § 1997e(g)(2).

Under separate order, the Court shall direct that service be initiated on Defendants under its E-Service Pilot Program for civil rights cases for the Eastern District of California.

IT IS SO ORDERED.

Dated: **September 3, 2025**          **/s/ Gary S. Austin**
                                       UNITED STATES MAGISTRATE JUDGE